## In re A.C.T.

[Cite as *In re A.C.T.*, 158 Ohio App.3d 473, 2004-Ohio-4935.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 2004 CA 9.

Decided Sept. 17, 2004.

Robert E. Long III, Miami County Assistant Prosecuting Attorney, for appellee.

J. Andrew Wannemacher, for appellant.

---

FREDERICK N. YOUNG, Judge.

{¶ 1} A.C.T. is appealing the judgment of the Miami County Common Pleas Court, Juvenile Division, which found her guilty of juvenile delinquency by having committed two assaults and being unruly.

{¶ 2} On September 15, 2003, A.C.T., a student at Piqua High School, got into an argument with another student in a classroom at the school. A.C.T. slapped the other student in the face and ran into the hallway. The other student followed A.C.T. into the hallway, and blows were exchanged. When a teacher, Lisa Tapia, saw the altercation, she yelled at the students to stop the fight. Tapia observed A.C.T. punch the other student in the head and cock her arm to punch her again. To try to stop the fight, Tapia quickly inserted herself between the two students. A.C.T.'s punch that had been intended for the other student instead struck Tapia's back, injuring her. Tapia was knocked to the floor, essentially ending the fight between the students. A.C.T. helped Tapia up and proceeded to the school's office.

{¶ 3} Subsequently, A.C.T. was charged with juvenile delinquency by committing two counts of assault, one as a misdemeanor for the assault on the student and one as a felony for the assault on Tapia. Additionally, A.C.T. was charged with one count of being unruly. A.C.T. then admitted the one misdemeanor assault and the one count of being unruly. As to the remaining count of assault that was a felony for assaulting Tapia, the parties entered into joint stipulations of fact and orally argued the case. The trial court allowed the parties to submit posttrial memoranda and then found A.C.T. guilty of assault as a felony for assaulting a school teacher, Tapia.

{¶ 4} As a result of her guilty determination on a fifth-degree felony, A.C.T. received a suspended commitment to the Ohio Department of Youth Services for an indefinite period of a minimum of six months and a maximum period not to exceed her attainment of 21 years of age, a suspended commitment to the Miami Valley Rehabilitation Program, restitution, and a $100 fine.

{¶ 5} A.C.T. has filed this appeal of the trial court's determination of guilt on the assault on Tapia, raising the following assignment of error.

{¶ 6} "The trial court incorrectly applied the enhancement section of the assault statute after using the doctrine of transferred intent to find guilt."

■ {¶ 7} Essentially, A.C.T. appears to be arguing that the evidence against her was insufficient to support the delinquency adjudication because the state cannot prove the required mental state for the crime of assault as a fifth-degree felony. The standard of review for an appeal based on sufficiency of the evidence in juvenile delinquency matters is the same as in a criminal prosecution. *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368; *In re Watson* (1989), 47 Ohio St.3d 86, 92, 548 N.E.2d 210. The appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 8} The crime of assault is described in R.C. 2903.13, which provides:

{¶ 9} "(A) No person shall knowingly cause or attempt to cause physical harm to another or another's unborn.

{¶ 10} "* * *

{¶ 11} "(C) Whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), (3), (4), or (5) of this section assault is a misdemeanor of the first degree.

{¶ 12} "* * *

{¶ 13} "(2) If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree:

{¶ 14} "* * *

{¶ 15} "(e) The victim of the offense is a school teacher or administrator or a school bus operator, and the offense occurs in a school, on school premises, in a school building, on a school bus, or while the victim is outside of school premises or a school bus and is engaged in duties or official responsibilities associated with the victim's employment or position as a school teacher or administrator or school bus operator * * *."

{¶ 16} Additionally, this case involves the doctrine of transferred intent, which has been explained as a situation " 'where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the same person.' " *State v. Free* (Feb. 13, 1998), Montgomery App. No. 15901, 1998 WL 57373, quoting *State v. Mullins* (1992), 76 Ohio App.3d 633, 636, 602 N.E.2d 769.

{¶ 17} Ohio courts have noted that the state legislature is aware of the doctrine of transferred intent, at times applying the doctrine and other times refusing to apply the doctrine to a statute. *State v. Mullins*, 76 Ohio App.3d at 636, 602 N.E.2d 769 (noting that at one time the legislature did not want the doctrine to apply to aggravated murder cases). Thus, when the legislature does not wish the doctrine of transferred intent to apply to a crime it can specifically say so in the statute. Id.

{¶ 18} The doctrine of transferred intent originated in the Ohio Supreme Court in *Wareham v. State* (1874), 25 Ohio St. 601, 1874 WL 120. The *Wareham* court reasoned that the offender's intent should transfer with the victim because the lives of all persons are equally valued and protected under the law. In explaining

the doctrine, the court noted that the crime was "complete as though the person against whom the blow was directed" was injured.

{¶ 19} In her appeal, A.C.T. argues that the trial court erred in finding her guilty of assault as a felony for striking the teacher, Tapia. Specifically, A.C.T. argues that the trial court erred in applying the doctrine of transferred intent to find that A.C.T.'s intent to strike another student could be transferred and meet the statute's requirement of intent to strike a school teacher.

{¶ 20} The mental state required by R.C. 2903.13(A) is that no person shall "knowingly" cause or attempt to cause physical harm to another. R.C. 2901.22(B) defines "knowingly," stating:

{¶ 21} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶ 22} In *In re Mark M.*, the Sixth District Court of Appeals addressed a situation wherein a teacher attempted to stop a fight and was struck as a result. (Feb. 4, 2000), Erie App. Nos. E–99–028 and E–99–046, 2000 WL 125800. In *Mark M.*, a student was being restrained by a teacher when another student made an offending remark. The student pushed the teacher in order to obtain access to the offending speaker. The court found that the required mental state of knowing that the push might cause injury was not proven. Additionally, in the same case, the student, Mark M., had two exchanges with another teacher. In one instance, Mark M. was going after an offending speaker when the teacher grabbed and restrained him. On the second occasion, Mark M. attempted to flee from a room where the teachers were restraining him and the teacher tackled Mark M., injuring himself in the process. The court found that for these later two incidents Mark M. lacked the requisite mental culpability, as the teacher had initiated the physical contact.

{¶ 23} Additionally, the Fifth District Court of Appeals dealt with a situation involving a teacher who was injured while attempting to stop a fight between two students. *In re John Freeborn* (Dec. 15, 1999), Morgan App. No. 98CA08, 2000 WL 1533. In *Freeborn*, the teacher noticed a fight in which two male students were punching each other. The teacher initially yelled at the students to stop, but when they did not he had to physically intervene. The teacher grabbed both of the students by the backs of their shirts and pulled them apart. While one student stopped struggling, the other student continued to struggle. Finally, the teacher had to push the student into the bleachers to prevent him from going after the other student. While trying to restrain the student, the teacher received several incidental strikes from the student kicking and flailing. However, the student's behavior then changed, and he threatened the teacher and

punched the teacher in the face. The appellate court noted that the incidental and accidental strikes the teacher received while the student was flailing would not amount to assault, as this would not rise to the required mental state of "knowingly." However, the court found that the trial court was correct in finding that an assault occurred because of the student's punch to the teacher's face, as the evidence of the threats and changed behavior indicated that the student struck the teacher knowingly.

{¶ 24} Both the state and A.C.T. agree that A.C.T. knowingly attempted to strike her fellow student when she accidentally struck Tapia. The doctrine of transferred intent stems from case law that reasoned that the law sees all victims as equals. However, in this case, the statute makes a distinction among victims, making it a greater offense to strike a teacher than a student. Moreover, the statute intends to reach those offenders who would knowingly strike a teacher on school grounds while she was acting in her function as a teacher. Clearly, the legislature thought that an offender who would "knowingly" strike a school teacher was a more serious offender than one who would strike a student. We have difficulty in applying the transferred-intent doctrine to this situation wherein the victims are not treated equally under the statute, which dictates that injuring particular victims is a greater offense than injuring other victims.

{¶ 25} A.C.T. claims that she did not hear Tapia tell the students to stop fighting. Rather, it was not until A.C.T. had struck Tapia that A.C.T. realized that Tapia was present. Thus, this was not a situation in which A.C.T. continued flailing and punching without any regard for the teacher's presence. On the contrary, A.C.T. had already cocked her arm to strike the fellow student before Tapia inserted her body between the fighting students. This case appears to this court to be similar to *In re Mark M.*, in which the blows the teacher received were found to be merely incidental or accidental and did not satisfy the mental-culpability requirement of "knowingly." Therefore, like the court in *Mark M.*, we do not believe that A.C.T. meets the mental-culpability element of assault on a school teacher. Thus, the state presented insufficient evidence to support the finding of guilt on A.C.T.'s count of assault on a school teacher.

{¶ 26} A.C.T.'s assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded.

Judgment reversed.

BROGAN and GRADY, JJ., concur.