[Cite as *In re D.S.*, 2010-Ohio-5694.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: D.S., | : | |
| | : | |
| Adjudicated Delinquent Child. | : | Case No: 10CA893 |
| | : | |
| | : | |
| | : | <u>DECISION AND</u> |
| | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| | : | File-stamped date: 11-18-10 |

---

APPEARANCES:

Timothy Young, Ohio Public Defender, and Amanda J. Powell, Assistant Ohio Public Defender, Columbus, Ohio, for Appellant.

Aaron E. Haslam, Adams County Prosecutor, and Barbara Moore-Eiterman, Adams County Assistant Prosecutor, West Union, Ohio, for Appellee.

---

Kline, J.:

**{¶1}** D.S., an adjudicated delinquent child, appeals the judgment of the Adams County Court of Common Pleas, Juvenile Division. D.S. was adjudicated delinquent for committing an assault upon a teacher. On appeal, D.S. contends that insufficient evidence supports his delinquency adjudication. Specifically, D.S. argues that there is no proof he knowingly attempted to cause physical harm when he pushed a teacher aside. We disagree. After viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of assault proven beyond a reasonable doubt. Accordingly, we affirm the judgment of the trial court.

I.

{¶2} On the morning of October 29, 2009, D.S. stood outside of Manchester High School (hereinafter "Manchester") while he waited for a school bus that would have taken him to an alternative high school. Manchester teachers David Knauff (hereinafter "Knauff") and Mr. Nelson (hereinafter "Nelson") were on duty that morning. Although D.S. had permission to enter Manchester only to use the bathroom, he had apparently entered the building several times in the days before October 29. For that reason, Nelson warned Knauff that he "might have some trouble with [D.S.] again trying to come into the building [and] to keep an eye out." March 17, 2010 Transcript at 8.

{¶3} Wanting to talk to the principal that morning, D.S. once again entered Manchester. Nelson confronted D.S. and told him that he did not have permission to be in the building, but D.S. tried to "proceed on through" Nelson and into the principal's office. March 17, 2010 Transcript at 9. At that point, Knauff confronted D.S. and told D.S. that he had to leave the building. D.S. responded by moving towards Knauff and, according to Knauff, making contact with Knauff's chest. (D.S. denied "chest butting" Knauff.) D.S. then backed away, and Knauff proceeded to escort D.S. out of the building while D.S. shouted profanities.

{¶4} A few minutes later, D.S. once again entered Manchester. According to Knauff, D.S. "came in through the entrances again, and he was coming pretty much at a rapid pace. [Knauff] turned to meet him, and [D.S.] grabbed [Knauff] and pushed [him] aside and continued on." March 17, 2010 Transcript at 9.

{¶5} On November 9, 2010, a juvenile complaint charged that D.S. "did knowingly cause or attempt to cause physical harm to David Knauff, a teacher. Said act in violation of Section 2152.02.1 [sic] and 2903.13(A) of the Ohio Revised Code and

against the peace and Dignity of the State of Ohio."  Because Knauff is a teacher, and because the alleged assault occurred on Manchester grounds, D.S. was charged with the juvenile equivalent of a fifth-degree felony.  See R.C. 2903.13(C)(2)(e).

{¶6}    Knauff was the state's only witness at D.S.'s adjudicatory hearing.  During the hearing, the state asked Knauff to explain the "grab and push" in greater detail.

{¶7}    "Q. Where did he grab you at?

{¶8}    "A. Here.

{¶9}    "Q. On your side, not your arms?

{¶10}  "A. No, well somewhere in my mid region.  He didn't grab me up here, no.

{¶11}  "Q. Okay.  And he didn't grab you by the arms, like this, it was more your…

{¶12}  "A. No, to my recollection it was here and like this.

{¶13}  "Q. Okay. Did that cause any physical harm to you?

{¶14}  "A. No it, it, no I didn't have any injuries.

{¶15}  "Q. As far as not having injuries, did it, I mean did you feel, did you feel the contact?

{¶16}  "A. Oh I felt the contact, yes, but I didn't need medical attention.

{¶17}  "Q. Okay.

{¶18}  "A. …from it, no."  March 17, 2010 Transcript at 9-10 (ellipses sic).

{¶19}  After Knauff's testimony, D.S.'s counsel made the following motion: "* * * I don't know what the terminology is in Juvenile Court, so pardon me, I mean if I was in adult Court I would call for a directed verdict of acquittal or judgment of acquittal since there's no jury I suppose.  I suppose I would ask for a finding of, that he is not a

delinquent child in this matter. Due to the fact that one of the elements of assault is that he, the State must prove beyond a reasonable doubt that the child, knowingly caused or attempted to cause physical harm. The only evidence, the only testimony I heard was from the alleged victim, David Knauff, who specifically said he had no physical injuries. Said he felt the contact, but even in the liberal definitions of physical harm in the Revised Code, I don't believe that's enough to meet the definition of physical harm, just feeling contact. Contact could be a hug, it could be a pat on the back, it could be a handshake, any number of things, it's not physical harm, and there was no testimony that there was any type of physical harm here your Honor, and so I would, would so move." March 17, 2010 Transcript at 13-14.

{¶20} The trial court agreed with D.S.'s trial counsel as to the "chest bump," but disagreed as to the grab and push. As the trial court explained, "The Court must apply common sense, as do juries, and you don't approach a man, grab a man, try to throw a man unless you're attempting to cause some harm to a man. And so, the Court finds that the essential element of attempting to * * * cause physical harm has been met." March 17, 2010 Transcript at 15-16.

{¶21} D.S. testified on his own behalf, and he described the grab and push in the following manner: "* * * I went back in the building, and then Mr. Knauff and Mr. Nelson [were] both standing there, and I did not physically try to harm them in any way. I walked up to Mr. Knauff and I grabbed his shirt, and was going to squeeze in between the two of them, and I didn't shove him, I didn't touch his skin at all. He's, as soon as I touched his shirt he jumped back probably ten [feet] and started screaming, call the law.

I never tried to harm neither of them, and that's pretty much what happened."  March 17, 2010 Transcript at 21-22.

{¶22}  At the close of evidence, the trial court adjudicated D.S. to be delinquent on the charge of assault.  D.S. appeals and asserts the following assignment of error: I. "The trial court violated [D.S.'s] right to due process when it adjudicated him delinquent of assault, a fifth degree felony, absent proof of every element of the charge against him by sufficient, competent, and credible evidence.  The Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, and Juvenile Rule 29(E)(4)."

II.

{¶23}  In his sole assignment of error, D.S. contends that insufficient evidence supports his delinquency adjudication.  According to D.S., there is insufficient proof that he knowingly attempted to cause physical harm during the confrontation with Knauff.  Rather, D.S. claims that he merely "made incidental contact with Mr. Knauff in an effort to speak to the principal."  Merit Brief of [D.S.] at 5.

{¶24}  "We apply the same standard of review for weight and sufficiency of the evidence in juvenile delinquency adjudications as [we do] for adult criminal defendants." *In re T.R.*, Guernsey App. No. 10CA2, 2010-Ohio-4419, at ¶11, citing *In re R.G.*, Stark App. No. 2009-CA-00218, 2010-Ohio-138, at ¶10.  See, also, *In re T.C.*, Washington App. No. 09CA10, 2009-Ohio-4325, at ¶36.  Therefore, when reviewing a case to determine if the record contains sufficient evidence to support a delinquency adjudication, we must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt

beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, Pickaway App. No. 06CA7, 2007-Ohio-502, at ¶33, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319.

{¶25} The sufficiency-of-the-evidence test "raises a question of law and does not allow us to weigh the evidence." *Smith* at ¶34, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Instead, the sufficiency-of-the-evidence test "'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Smith* at ¶34, quoting *Jackson* at 319. This court will "reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact." *Smith* at ¶34, citing *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80; *State v. DeHass* (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.

{¶26} D.S. was adjudicated delinquent for assault. Under R.C. 2903.13(A), "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Additionally, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). And finally, "'[p]hysical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). This court has held that, "[w]hen accompanied

by the requisite intent, a * * * shove, push or grab * * * may satisfy the physical harm element of assault." *In re Pollitt* (Oct. 10, 2000), Adams App. No. 00 CA 687 (internal quotations omitted) (omissions sic). Thus, in the present case, we must determine whether there is sufficient evidence that D.S. knowingly attempted to cause physical harm during his confrontation with Knauff.

**{¶27}** To support his assignment of error, D.S. cites *In re Mark M.* (Feb. 4, 2000), Erie App. Nos. E-99-028 & E-99-046. In *Mark M.*, a teacher confronted three students involved in a verbal altercation. The teacher asked the adjudicated delinquent child to walk in the opposite direction, but the adjudicated delinquent child heard one of the other students make a derogatory comment. As a result, the adjudicated delinquent child "pushed [the teacher] out of the way and went after the person who uttered the remark." Id. A second teacher then arrived on the scene and restrained the adjudicated delinquent child.

**{¶28}** A short time later, the adjudicated delinquent child sat in the superintendent's office while the first teacher stood by the doorway and the second teacher used the phone. Suddenly, the adjudicated delinquent child charged into the first teacher "in what was described as a 'football' type drive. The force pushed [the first teacher] into the hall." Id. At that point, the second teacher dropped the phone and tackled the adjudicated delinquent child. Both teachers eventually subdued the adjudicated delinquent child, and, as a result of these incidents, the adjudicated delinquent child was charged with two counts of assault.

**{¶29}** On appeal, the adjudicated delinquent child raised several sufficiency-of-the-evidence arguments. And in part, the Sixth District Court of Appeals agreed with

the adjudicated delinquent child.  The court explained that, "[w]ith respect to appellant's hallway shove of [the first teacher], the magistrate's factual findings indicated that this incident occurred when the teacher attempted to block appellant's access to another student.  [The first teacher's] testimony was that when he moved in front of appellant, appellant pushed him to gain access to the offending speaker.  [The first teacher] claimed no injury from this[,] and the magistrate made no finding that appellant was aware that this push might cause injury.  Therefore, at least with respect to the hallway push of [the first teacher], the necessary mental element has not been satisfied."  Id.

{¶30}  However, the Sixth District Court of Appeals rejected the adjudicated delinquent child's argument as to the football-type drive.  As the court explained, "The football stance attack on [the first teacher] in the superintendent's office is another matter.  The magistrate concluded that [the first teacher] was 'shaken up' by this 'charge[ ].'  Clearly, appellant intended to move [the first teacher] without regard to whether such a physical encounter would cause harm.  Additionally, an individual of ordinary intelligence would have been aware that such an attack might cause some physical harm.  That it did not cause greater harm is fortunate for all concerned, but it does not negate the presence of all of the elements of assault on a teacher."  Id.

{¶31}  D.S. contends that *Mark M.* demonstrates the difference between physical contact with the requisite mental intent and physical contact without the requisite mental intent.  That is, D.S. argues that his case resembles the "hallway shove" in *Mark M.*, not the "football-type drive."  As such, D.S. claims that he did not have the requisite mental intent for assault when he pushed Knauff.

**{¶32}** Here, we are mindful that "[k]nowledge, like all kinds of intent, can be inferred from circumstantial evidence." *State v. Terry*, 186 Ohio App.3d 670, 2010-Ohio-1604, at ¶22, citing *State v. Seiber* (1990), 56 Ohio St.3d 4, 13-14. And after viewing the evidence in a light most favorable to the state, we believe that the circumstantial evidence in the present case differs significantly from the circumstantial evidence in *Mark M.* Most importantly, the juvenile in *Mark M.* did not have a heated confrontation with the teacher just prior to the hallway shove. Furthermore, as it related to the hallway shove, there was no evidence that the juvenile in *Mark M.* had any animus directed towards the teacher. Instead, the teacher in *Mark M.* just happened to be in the juvenile's way during a spur-of-the-moment encounter. Therefore, we find *Mark M.* to be easily distinguishable.

**{¶33}** In contrast to *Mark M.*, the evidence here supports the reasonable inference that D.S. had the requisite mental intent for assault. Before D.S. pushed Knauff, there was a verbal confrontation that included profanities and "very belligerent" behavior. March 17, 2010 Transcript at 9. Then, D.S. left the building, reentered the building, walked towards Knauff at a "rapid pace," and pushed Knauff aside. March 17, 2010 Transcript at 9. Based on these events, one could reasonably infer that D.S. sought out a physical confrontation with Knauff. And because of the profanity and belligerent behavior directed towards Knauff, one could reasonably infer that an animus for Knauff motivated D.S.'s actions. Accordingly, the circumstantial evidence supports the reasonable inference that D.S. knowingly attempted to cause physical harm by pushing Knauff aside. This is so even though Knauff did not suffer any actual injuries as a result of the push.

**{¶34}** Thus, after viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found all the essential elements of assault proven beyond a reasonable doubt. Accordingly, we overrule D.S.'s assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, P.J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court

BY:_____
        Roger L. Kline, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**